IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV631-2-V)
(3:01CR152-2-V)

| | |
|---|---|
| **KEVIN EUGENE TEAGUE,** )<br>    Petitioner,    )<br>                  )<br>    v.            )<br>                  )<br>**UNITED STATES OF AMERICA,** )<br>    Respondent.   )<br>_____) | **O R D E R** |

**THIS MATTER** is before the Court on petitioner's Motion to Vacate, Set Aside, or Correct under 28 U.S.C. §2255 (as amended), filed December 28, 2004 (documents ## 1 and 4); on the "Government's Response To Petition's Motion To Vacate . . . And Motion For Summary Judgment," filed May 19, 2005 (document # 10); and on the "Petitioner's Reply To The Government's Response . . . And Response To Government's Motion For Summary Judgment," filed July 25, 2005 (document # 14).

Inasmuch as the government agrees that the petitioner is entitled to have his conviction for the lesser offense of bank robbery merged with his conviction for armed bank robbery (Counts Two and Three, respectively), and to have his sentence on Count Two vacated, the instant Motion to Vacate will be <u>granted</u> to that extent. However, the government's Motion for Summary Judgment will be <u>granted</u> on the balance of the petitioner's claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The record reflects that on August 6, 2001, a multi-count Bill of Indictment was filed, charging the petitioner (and 3 others) with several violations of federal law. In particular, the petitioner was charged with conspiracy to commit a federal offense, in violation of 18 U.S.C. §371 (Count One), with bank robbery, in violation of 18 U.S.C. §§2113(a) and 2 (Count Two), with armed bank robbery, in violation of 18 U.S.C. §§2113(d) and 2 (Count Three), with three separate acts of using, carrying, brandishing and discharging a firearm during the commission of a crime of violence and aiding and abetting that conduct, all in violation of 18 U.S.C. §924(c)(1) and 2 (Counts Four through Six).

After initially entering "not guilty" pleas to all of the foregoing charges, on March 21, 2002, the petitioner appeared before the Court and tendered "straight up" guilty pleas to conspiracy and robbery charges. On that occasion, this Court conducted its standard Plea & Rule 11 Hearing in this matter. During that proceeding, the Court engaged the petitioner in a lengthy colloquy to ensure that his guilty pleas were being intelligently and voluntarily tendered. Based upon the petitioner's responses to its numerous questions, the Court conditionally accepted the subject guilty pleas.

However, on May 23, 2002, the petitioner proceeded to trial on the three firearms charges set forth in Counts Four through Six.

During the course of that trial, the government presented testimony from several witnesses, including the victim bank teller, a motorist; the officer who apprehended the petitioner; the man who unwittingly loaned the petitioner the get-away car; and the co-defendant who drove that get-away car for the robbery.

By the testimony of those witnesses, the government established that on August 1, 2001, the petitioner and his two male co-conspirators armed themselves and made plans to rob a satellite First Commerce Bank facility in Cornelius, and the fourth conspirator planned to drive the get-away car. After the petitioner borrowed the car of one of the petitioner's acquaintances, the four rode to the victim Bank, where the petitioner and the other two males entered the Bank wearing ski masks.

Once inside, the petitioner pointed his gun at a teller, and then stationed himself as a look-out person while one of the other men went behind the counter and retrieved money from that teller's drawer. Next, the man behind the counter held his gun to the teller's head and threatened to shoot her if she failed to open her safe. After the teller got her safe open and gave its contents to the robber, the third robber went behind the counter and made sure that the second man had gotten all of the teller's cash. Finally, all three men fled the Bank in the get-away car with more than $7,500.00 in cash.

By that point, however, a witness from a nearby building

already had called the police. As a result, Officer Jamie Hamilton of the Huntersville Police Department, responded to the call. While sitting on a side street, the officer observed the get-away car drive past, and proceeded to follow the robbers. Once other police units had joined in the pursuit and the officer confirmed the description of the get-away car, he activated his blue lights and siren, and attempted to stop the robbers' car. However, as soon as the police car's lights and sirens were activated, a shot was fired at the officer from the right side of the get-away car which, by that point, was speeding toward Charlotte.

Thereafter, shots were continuously fired from the get-away car as the conspirators attempted to avoid capture. At times, the driver of the get-away car reached speeds of up to 100 miles per hour until she entered into a heavily trafficked area in northern Charlotte. Once in traffic, the get-away car driver began running other vehicles off of the road. At some point, one of the co-conspirators fired a shot which passed through the vehicle of an innocent motorist, sending glass shattering through her car, and injuring her face and upper body.

Finally, after crossing a median and making other erratic movements, the driver of the get-away car pulled off of the road and stopped. At that point, the petitioner ran from the car. Two additional gun shots were heard coming from the area where the petitioner was running. An officer pursued the petitioner, at which time he found the petitioner's gun on the path which the

petitioner was following.  Moments later, the petitioner was found. After a brief struggle with the officer, the petitioner was taken into custody.

The government also showed the jury a video tape and surveillance photographs which had recorded the conspirators during the robbery.  At the conclusion of the government's case in chief, defense counsel sought a summary dismissal of the charges under Federal Rule of Criminal Procedure 29.  However, that Motion was denied.

Next, the petitioner testified in his own behalf.  By that testimony, the petitioner maintained that he had not planned or sought to commit the subject robbery, but had merely acquiesced to his co-conspirators' requests that he serve as a look-out man for them.  The petitioner stated that he "did not recall" pointing his weapon at the teller; that he had asked his co-conspirators not to shoot at the police; and that he was not attempting to flee when he ran from the car, but simply was searching for a safe place from which to surrender.

On cross-examination, however, the petitioner admitted that he actually had been the driver when he and his co-conspirators selected the Bank which they intended to rob; and he conceded that the government's pictures showed him pointing a gun at the teller. Notwithstanding such evidence, defense counsel renewed his Rule 29 motion at the conclusion of all of the evidence.  Again, however, the defense's motion was denied.  In particular, the Court found

that the evidence raised a credibility issue which had to be resolved by the jury.

Ultimately, the jury was persuaded by the government's evidence, as it found the petitioner guilty of having brandished his firearm; and it found him guilty of having aided and abetted his co-conspirators in brandishing and discharging their firearms.

Consequently, the Court held a Sentencing Hearing on October 25, 2002. At the outset of that Hearing, the Court considered and rejected defense counsel's "Motion to Set Aside Special Verdict." Thereafter, the Court found that as to the robbery-related convictions--due to the absence of a criminal history--the petitioner's Criminal History Category was I and his total Offense Level was 26, thereby exposing him to a range of 63 to 78 months imprisonment. As to the firearms convictions, the Court found that the petitioner was facing a consecutive statutory minimum mandatory term of 10 years imprisonment pursuant to 18 U.S.C. §924(c)(1)-(A)(iii).

The Court next heard from the petitioner and his family, all of whom asked the Court to be merciful to the petitioner. At the conclusion of the Hearing, the Court sentenced the petitioner to 183 months imprisonment, that is, to the lowest possible term. The petitioner timely gave his Notice of Appeal to the Fourth Circuit Court of Appeals.

On appeal, the petitioner argued that this Court had erred in relying on the jury's special findings to calculate his sentences

for the firearms convictions. More precisely, the petitioner claimed that this Court had violated his rights by submitting to the jury the factual predicate questions underlying his firearms convictions. See United States v. Teague, No. 02-4983, slip op. at 2 (4th Cir. July 18, 2003) However, the appellate Court flatly rejected that contention, finding instead that the petitioner's rights simply were not violated by the Court's submission of the subject questions to the jury. Id. Therefore, the Court affirmed the petitioner's convictions and sentences. Id.

Eventually on December 28, 2004, the petitioner returned to this Court with the instant Motion to Vacate. By this Motion, the petitioner alleges that he was subjected to ineffective assistance of trial counsel in that counsel failed to object to "multiplicatus" convictions and sentences on Counts Two through Six; counsel failed to object to the "double-counting" which occurred in connection with Counts One through Three; counsel failed to raise an Apprendi-based objection to the specific offense characteristics which were applied on Counts One through Three; and he failed to seek a judgment of acquittal notwithstanding the verdict on Counts Four and Six. In addition, on January 31, 2005, the petitioner amended his Motion to Vacate by adding a claim that counsel was ineffective for having failed either to seek a plea agreement and/or to communicate such an offer to him.

On May 19, 2005, the "Government's Response To Petitioner's Motion To Vacate . . . And Motion For Summary Judgment" was filed.

7

Notably, by that combined document the government first concedes that the petitioner is correct in his argument that he erroneously received multiple sentences for both of his bank robbery convictions. Consequently, the government asks the Court to merge the petitioner's bank robbery conviction under §2113(a) (Count Two) with his armed bank robbery conviction under §2113(d) (Count Three), and to vacate the petitioner's concurrent 63-month sentence for the lesser, included offense under Count Two.

However, the government denies that the petitioner is entitled to any relief on his other claims. In particular, the government argues that the petitioner's convictions for armed bank robbery and the 924(c) violations do not violate the Double Jeopardy Clause; that his conviction for having brandished a firearm is distinct from his convictions for having aided and abetted his co-conspirators in brandishing and discharging their guns; that his claim that certain characteristics were double-counted is foreclosed by precedent; that the alleged Apprendi errors cannot be raised in this proceeding; that his claim that counsel failed to seek an acquittal is baseless; and that the petitioner cannot demonstrate either deficient performance or prejudice in connection with his claim concerning the absence of a plea offer.

In support of its Motion for Summary Judgment, the government filed an affidavit from the petitioner's former attorney. Such affidavit takes issue with the petitioner's claim concerning the absence of a plea offer, noting that he had expressly advised the

8

petitioner of the prosecutor's statement that the government would not be extending a plea offer to the petitioner because the prosecutor did not "desire any cooperation from [him]."

Accordingly, on July 25, 2005, the petitioner filed his own affidavit, essentially reiterating his earlier arguments. The petitioner also filed a Response which challenged the government's assertions that he is not entitled to relief on claims two through five.

Now, after having carefully considered the foregoing documents along with the relevant legal precedent, the Court concludes that the petitioner is entitled to have his bank robbery sentence (and its corresponding requirements) for Count Two vacated, but he is not entitled to any relief on his other claims.

## II. **ANALYSIS**

With respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen'l. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th

9

Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

To put it another way, in order to demonstrate prejudice, the petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986), citing United States v. Frady, 456 U.S. 152, 170 (1982). Under these circumstances, then, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. Therefore, if the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

### A. As the government concedes, the petitioner is entitled to have his bank robbery sentence vacated and to have that conviction merged with his armed bank robbery conviction.

Turning to his first claim, the record establishes that the petitioner entered a "straight-up" guilty plea to a charge of conspiracy to commit an offense against the government, in violation of 18 U.S.C. §371 (Count One). The petitioner also entered "straight-up" guilty pleas to both bank robbery and armed bank robbery, all in violation of 18 U.S.C. §§2113(a) and (d) (Counts Two and Three, respectively). At sentencing, the Court calculated the petitioner's term based upon the armed robbery conviction, as that is the most serious of the three offenses, and then it imposed concurrent terms of 63 months imprisonment on each of the three convictions.

However, as the government concedes, the petitioner should not have received even a concurrent term of imprisonment on the bank robbery conviction, as that is a lesser, included offense of the armed bank robbery offense which he committed. To be sure, the two robbery convictions should have been merged together, and the petitioner should have been sentenced only on the conspiracy and armed bank robbery convictions. Thus, the petitioner is correct that counsel was deficient for having failed to challenge his sentence on Count Two for such lesser, included offense. See United States v. Gaddis, 424 U.S. 544, 547 (indicating that

11

convictions under both §§2113(a) and (d) for a single robbery must be merged).

Furthermore, the petitioner was prejudiced by that deficiency to the extent that he received a separate three-year term of supervised release on Count Two. Consequently, the Court will enter an amended Judgment, noting that the subject convictions are merged and that the petitioner's sentence and his three-year term of supervised release on the bank robbery conviction (Count Two) both are vacated. See United States v. Jones, 204 F.3d 541, 544 (4th Cir. 2000) (holding that convictions for cocaine possession and possession with intent to distribute cocaine must be merged and separate sentence for cocaine possession, the lesser included offense, must be vacated). However, because the conviction on the bank robbery offense is being merged and not vacated, the petitioner still is required to pay the $100.00 special assessment for that conviction.

On the other hand, however, the petitioner is mistaken as to his contention that his convictions and sentences on Counts Four through Six also are "multiplicatus" and in violation of the Double Jeopardy Clause. To be sure, unlike the two robbery offenses, the firearms offenses all were separate, distinct violations of federal law. That is, by his conviction on Count Five, the petitioner was found to have carried and brandished his own firearm; and by his convictions on Counts Four and Six, he was found to have aided and

abetted his co-conspirators in the brandishing and discharging of their firearms.

In short, because the petitioner was guilty of multiple firearms offenses--none of which were lesser, included offenses of the other--he properly was subjected to conviction <u>and</u> sentencing for all such offenses. Therefore, this portion of the petitioner's first claim must be rejected.

> **B. <u>Counsel was not ineffective for having chosen not to argue that the enhancements which the Court imposed on Counts One through Three constituted double counting</u>**.

By his second claim, the petitioner alleges that counsel should have argued that the two-level increase which was imposed due to the injury to the innocent motorist and the three-level increase which he received for the assault of the officer constituted double-counting, because the conduct underlying those increases was the same as the conduct which was punished by his §924(c) convictions. To support this claim, the petitioner relies on Application Note 2 for U.S.S.G. §2K2.4, which forbids the application of any specific offense characteristics for non-firearms offenses when defendants also are being sentenced for firearms offenses. However, a careful review of the provisions to which the petitioner is pointing clearly reveals that he has misapprehended both the controlling facts and the law.

Indeed, this Court is aware that the Fourth Circuit repeatedly has rejected arguments that enhancements based upon the same or

closely related facts constitute impermissible double-counting as the petitioner contends. For instance, in <u>United States v. Sloley</u>, 19 F.3d 149, 154 (4th Cir. 1994), the appellate Court expressly held that an enhancement for assaulting an official victim and a §924(c) conviction based on the same conduct did <u>not</u> constitute impermissible double-counting. <u>See also</u> <u>United States v. Hughes</u>, 396 F.3d 374, 383-84 (4th Cir. 2005) (enhancement for obstruction of justice in bankruptcy fraud case based on perjury committed in bankruptcy court <u>not</u> impermissible double-counting); <u>United States v. Wilson</u>, 198 F.3d 467, 472 n. (4th Cir. 1999) (sentence for use of firearm in violation §924(c) and enhancement for "physical restraint" with same gun <u>not</u> impermissible double-counting), <u>cert. denied</u>, 529 U.S. 1076 (2000); <u>and</u> <u>United States v. Turner</u>, 198 F.3d 425, 431-32 (4th Cir. 1999) (conviction for killing an individual while engaged in continuing criminal enterprise and enhancement for "supervisory role" <u>not</u> impermissible double-counting), <u>cert. denied</u>, 529 U.S. 1061 (2000).

Moreover, the language from Part K of the Guidelines (relating to firearms convictions) is irrelevant because none of the petitioner's sentences were calculated under those provisions. Rather, the petitioner's sentences for the conspiracy and bank robbery convictions were calculated pursuant to Part B of the Guidelines, which pertains to financial crimes; and the Court expressly declined to impose any firearms-related enhancements from §2K to those calculations due to the petitioner's convictions on

14

the firearms offenses.

However, the petitioner's firearms sentences did not include any Guidelines enhancements, and were calculated pursuant to the mandatory terms imposed under the relevant statute--that is, 18 U.S.C. §924(c)(1)(A)(iii), not under the Guidelines. To put it simply, then, the petitioner was not sentenced in violation of the prohibition set forth in §2K of the Guidelines. Therefore, counsel had no reason or basis upon which to object to the subject calculations.

### C. The petitioner's claim that counsel was ineffective for having failed to raise an Apprendi-based objection is baseless.

Here, the petitioner alleges that counsel should have argued that the Court's application of certain offense-related increases to his robbery sentences violated the rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000) and its progeny, because the facts underlying the increases were not alleged in the Indictment. Although the government is correct in its response that neither Apprendi nor the cases in its line of reasoning are retroactively applicable in collateral proceedings such as this, that fact is not dispositive of this claim. Indeed, the petitioner actually is not asking this Court now to apply Apprendi in order to grant him relief, but rather he is asking the Court to conclude that his attorney was ineffective for not having raised an Apprendi argument at sentencing.

The obvious problem with this position, however, is that at the time that the petitioner was sentenced in October 2002, the U.S. Supreme Court had not ruled that Apprendi even was applicable in federal sentencing proceedings. See United States v. Hammoud, 381 F.3d 316 (4th Cir. 2004) (holding that Apprendi and its progeny did not apply to the U.S. Sentencing Guidelines). To be sure, it was not until after the petitioner was sentenced when the Supreme Court decided United States v. Booker/Fanfan, 543 U.S. 22 (2005) holding, in part, that the rule from Apprendi is applicable to federal sentencing proceedings.

Thus, in October 2002 the petitioner's attorney had no basis upon which to object to the subject increases since the law in this Circuit then dictated that a sentence which included sentencing enhancements, but did not exceed the statutory maximum term, simply did not violate Apprendi. See United States v. Roberts, 262 F.3d 286, 291 (4th Cir. 2001) (concurrent 30-year sentences based upon uncharged enhancements not in violation of Apprendi, where defendant faced a 30-year statutory maximum due to prior conviction); United States v. Angle, 254 F.3d 514, 518 (4th Cir.) (en banc) (sentence up to 20-year statutory maximum based upon sentencing factors not implicated by Apprendi), cert. denied, 534 U.S. 937; and United States v. Kinter, 235 F.192, 201 (4th Cir. 2000) (factual determinations which increase sentence under Guidelines not affected by Apprendi, so long as sentence does not exceed statutory maximum for offense of conviction).

16

Here, the statutory maximum for the armed bank robbery conviction was 25 years. See 18 U.S.C. §2113(d). However, the petitioner actually received a much lower term of 63 months imprisonment for that offense. Suffice it to say, therefore, the petitioner cannot establish either deficient performance or prejudice in connection with this claim.

### D. **The petitioner's de-facto challenge to the sufficiency of the evidence also must fail**.

By his next claim, the petitioner argues that counsel was ineffective for having failed to seek a judgment of acquittal following the jury's publication of its verdicts. This claim, however, need not long detain the Court.

First, as the government has correctly noted, defense counsel did, in fact, challenge the jury's verdicts by his post-verdict Motion to Set Aside Special Verdict. However, this Court properly rejected that Motion as baseless. Therefore, the petitioner simply is factually mistaken as to this matter.

Second, and more importantly, the thrust of the petitioner's argument here is that the evidence was insufficient to support his convictions on the firearms offenses because "the government failed to prove beyond a reasonable doubt every element of the crime[s] with which the petitioner was charged." However, as was earlier recounted, the government produced evidence that the petitioner violated §924(c), and aided and abetted his co-defendants in violating that provision. That is, the subject evidence showed

17

that the petitioner entered the bank armed with a loaded gun; that he initially pointed his gun at the teller, and then stood watch with that gun during the robbery; that his co-defendants pointed their weapons at the teller and threatened to shoot her if she did not surrender all of her money; and that his co-conspirators fired multiple shots at police as the group attempted to avoid capture.

On this record, then, any additional attempts by counsel to set aside the jury's verdict would have been ill-fated inasmuch as the evidence more than adequately supported the jury's decisions. See generally United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982) (noting that a Rule 29 motion should be denied if "viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt."). Therefore, this belated challenge to the sufficiency of the evidence must fail.

    **E.  The petitioner's claim regarding the absence of a Plea offer also is feckless**.

By his final claim, the petitioner alleges that counsel was ineffective for having failed either to secure or to convey a plea offer. However, as the government pointed out, there simply is no constitutional right to a plea offer. Therefore, counsel could not have been deficient for not having secured such an offer.

Moreover, the attachments to the government's Response to the petitioner's Motion to Vacate establish that the government was not interested in entering into a plea agreement with the petitioner

and, in fact, the government communicated that disinterest by letter to the defense counsel on at least two occasions. On this record, then, it is clear that there was no plea offer for counsel to have communicated to the petitioner. Ultimately, therefore, the petitioner cannot establish deficient performance or prejudice in connection with this claim.

### III. CONCLUSION

Other than establishing that his concurrent 63-month sentence and the three-year term of supervised release must be vacated for Count Two, the petitioner has failed to show that he is entitled to any relief. Accordingly, the Court will enter an amended Judgment, reflecting such modifications, but will leave the rest of the petitioner's Judgment undisturbed.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The petitioner's Motion to Vacate is **GRANTED** as to claim One in that the Clerk shall prepare an Amended Judgment, reflecting that the petitioner's convictions on Counts Two and Three are **merged**, and that his concurrent 63-month sentence and his three-year term of supervised release are **vacated**, but only as to Count Two.

2. The government's Motion for Summary Judgment is **GRANTED** as to the petitioner's remaining allegations as set forth in Claims Two through Five.

3. The petitioner's Motion to Vacate is **DENIED** and **DISMISSED** as to claims Two through Five.

4. The Clerk shall send copies of this Order to the petitioner, to former defense Counsel (Mr. Randolph M. Lee), and to counsel for the government.

**SO ORDERED.**

Signed: July 31, 2006

Richard L. Voorhees
United States District Judge